(Putnam County Common Pleas.)

(Decided November 20th, 1897.)

THE HOOSIER CANNING MANUFACTURING COMPANY v. DONOVAN et al.

---

Where a large number of persons agreed to purchase a factory of a builder—by the terms of which contract of purchase, they were to become the owners of the factory in common—the subscriptions toward the purchase price ranging from $25 to $100 each, and each of the several subscribers to become liable for no part of the purchase price, except that portion subscribed by him:

Held: 1st. That in an action to recover the purchase price of the factory, section 5009 of the code authorizes joining all or any number of the subscribers in a single action, although a several judgment is sought against each for the sum subscribed by him.

2nd. That one of the defendants having been summoned in the county where suit was brought, summons may issue to other counties for the remaining defendants, as provided in section 5039 of the code.

3rd. That the jurisdiction of the common pleas court over the subject matter, as to each defendant, is determined by the amount sought to be recovered against him, and not by the aggregate sum sought to be recovered against all; and that the action must be dismissed as to each defendant against whom less than $100 is sought to be recovered.

---

Motion to quash service.

SHEETS, J.

The plaintiff filed its petition in the court of common pleas of Putnam county against one hundred and twelve persons, seeking to recover a several judgment against each, for the amount each subscribed to pay toward the erection of a canning factory, the subscriptions ranging in amount from $25 to $100.

One of the defendants, a subscriber of $100, was served with summons in Putnam county. The remainder of the defendants reside in the counties of Henry and Wood, and were there served with summons.

Motion is made to quash the service of summons on all the defendants who were served outside of Putnam county. The ground of the motion for those who subscribed $100 is that this court has no jurisdiction over their persons.

As to those who subscribed less than $100 the grounds of the motion are two-fold.

First: That this court has no jurisdiction over their persons.

Second: That this court has no jurisdiction over the subject matter— the amount of the recovery sought against each being less than $100.

Section 5009, Revised Statutes, provides:

"One or more of the persons severally liable on an instrument may be

included in the same action thereon."

Section 5038 provides:

"When the action is rightly brought in any county according to the provisions of chapter five of this division, a summons may be issued to any other county, against one or more of the defendants, at the plaintiff's request; but no maker or acceptor, or, if the bill is not accepted, no drawer of an instrument for the payment of money only, should be held liable in an action thereon, except on warrant of attorney, in any county other than (the) one in which he, or one cf the join makers, acceptors, or drawers, resides or is summoned."

From these two sections the following propositions may be deduced:

First: If the contract sued upon is, as to all the parties to it, to be treated as one instrument within the meaning of section 5009, then the defendants are properly joined even though they are severally liable.

Second: This court has jurisdiction over the persons of all the defendants provided they are properly joined in this action.

Whether this court has jurisdiction over the persons of the defendants served outside of Putnam county, depends upon the construction of the contract sued on.

The provisions of this contract in so far as they bear on the questions at issue are substantially as follows:

The plaintiff was to construct and equip for the subscribers thereto, a canning factory of the size, style and equipment designated therein, for sixty-eight hundred dollars; duplicates of the same contract to be circulated for subscriptions, and when the full contract price was subscribed, then all the duplicates should be attached and constitute the sole contract between the parties; the subscribers to meet within five days after the date of the contract and appoint an executive committee with full power and authority to represent the subscribers' interests from time to time, while the plaintiff was building and equipping the factory; the committee also to procure a site for the factory within ten days after their appointment, and

to accept the factory, when completed, for the subscribers; subscriptions to any amount over and above the contract price, were allowed to be obtained, all of which were to belong to plaintiff until the contract price should be fully paid; after payment in full, the remaining subscriptions uncollected to belong to the subscribers; each subscriber bound himself to pay the amount subscribed by him and no more; the subscribers to have the privilege of incorporating among themselves, fixing the capital stock at not less than the amount subscribed, shares to be issued to the subscribers in proportion to their paid up interest.

It is claimed by counsel for defendants that section 5009 of the code works no broader change than to allow the joinder of defendants severally liable for the same debt evidenced by the same instrument, such as joining the maker and indorser or guarantor of a promissory note (26 Ohio St., 330). Also that the contract sued upon should be construed just as though each defendant had obligated himself in a separate instrument to pay the sum subscribed by him; that there is no difference in principle between the contract in question than a church subscription, or local aid to a railroad, where all may sign the same paper, and each agrees to pay the sum set opposite his name for the purpose specified.

Conceding, for the purpose of argument, that such subscriptions as last suggested are to be treated in law as separate and independent instruments and not falling within the provisions of section 5009 of the code, there is a marked distinction between such instruments and the one at bar. In the case suggested each subscriber agrees to contribute to an enterprise not his own—each subscriber has no interest in what any other subscriber does—and no joint interest in the property their subscriptions pay for.

By the terms of the contract sued upon all the subscribers purchased a canning factory of plaintiff and became the joint owners. They not only owed the plaintiff an obligation, but they were mutually obligated to one

another to carry out the terms of the contract.

If the contract sued upon is to be regarded as a separate and independent instrument between the plaintiff and each subscriber, then each subscriber has no interest in the performance by any other subscriber of his contract, and half the subscribers could repudiate their contract while executory, yet the remaining half insist upon its performance by plaintiff, and at the same time it could not recover the sums agreed to be paid by the repudiating subscribers. Each subscriber would be regarded as a separate and independent contractor with the plaintiff, possessing full power to repudiate the contract or insist on performance independently of the wishes of the other subscribers.

Such are some of the necessary consequences if the construction contended for by counsel for defendants is correct.

In law all the subscribers are one party, the plaintiff the other. If the subscribers wish to repudiate the contract while it is executory, they must all unite; any number less than all will not suffice

From the interest that each subscriber has in the performance of the contract by all the other subscribers, it is apparent that the instrument sued upon is joint in all its features, save and except the obligation to pay the contract price. That element only was apportioned severally among the subscribers.

See Gibbons v. Bente (Minn.) 22 L. R. A. 80, where a similar contract was construed, and the same conclusion reached.

It follows that the instrument sued upon is one and the same instrument as to all of the defendants within the meaning of section 5009 of the code unless the other contention of counsel obtains, i. e., that this section was meant to cover only cases where there is a several liability to pay the same debt, evidenced by the instrument.

The terms of this section are broad enough to include the case at bar; and since it is the policy of the law to avoid a multiplicity of suits; and the

purpose in enacting the code being to simplify the procedure, facilitate the administration of justice, and make litigation speedy and inexpensive, it certainly is but carrying out the spirit of modern procedure to hold that the case at bar comes within this section of the code.

Essentially the same question was before the supreme court of Kentucky in Wilde v. Haycroft 2 Duval 309, where a like conclusion was reached.

In that case twenty-seven persons executed an instrument in the following form: "We, the undersigned, agree to become bound to A. as sureties for B., each for the sum of $100, for any goods he may buy of said A., each of us to be bound for $100 and no more, it being the true intent and meaning that each incurs for himself a separate liability for $100." Action was brought against all the signers and judgment rendered against each for the sum agreed to be paid by him.

Judge Robertson, in speaking for the court says: "In this case there is but one contract, and it is the same contract between the same parties, but several as to its obligation. And neither the language nor the presumed object of the section can be constructively restricted to a several contract binding each separate obligor for the whole amount of their aggregate liabilities.

"The letter of this section certainly authorizes no such restriction: and the policy of avoiding a vexatious multiplicity of actions for the breach of the same contract made at one and the same time by the same parties severally liable upon it."

In Pomeroy's Remedies &c., section 406, in discussing this section of the code, the author uses the following language:

"The terms of the statute are so broad and unrestricted that they include every kind and form of written contract upon which the parties thereto are made severally liable. It is not necessary that they should be bound for the same identical demand or debt, nor that each should be responsible for the aggregate amount of all their several liabilities. In other

words, it is not necessary that the judgment should be a joint one for the same single debt, not even a separate judgment against each for that one sum, not, as it would seem, a separate judgment against each for the same sum. If a contract should be made by a number of promisors by which each bound himself in an amount different from that of all the others, the liability would plainly be several, and the agreement itself would be embraced within the terms of the section."

The motion as to all the defendants who subscribed $100, therefore, will be overruled.

Is the motion well taken as to all those who subscribed less than $100?

This involves a solution of the following question:

Is the jurisdiction of this court determined by the aggregate amount sought to be recovered from all the defendants; or, is it determined as to each defendant, by the amount sought to be recovered from him?

According to the averments of the petition the contract has been completely executed except the one feature, that of payment—purely an action at law.

Judgment is sought, not against all for the same debt, but against each for the specific sum subscribed by him.

At common law there must have been separate actions against each defendant for the sum subscribed, brought in a court having original jurisdiction of the subject matter. The only change the code made was to permit a joinder of defendants in the same case. It did not enlarge the jurisdiction of the common pleas court over the subject matter, hence the same court must be resorted to now as though this provision of the code had not been enacted.

If a several action had been brought against each defendant, the plaintiff would have been compelled to resort to a justice court in each case where the subscription was less than $100, hence, it must do so now.

The motion on the part of all the

defendants who subscribed less than $100 will be sustained.

(The above holding was passed upon and approved by the circuit court.)